1    WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                         FOR THE DISTRICT OF ARIZONA

8

9    Richard LeGrand Gause,                    No.  CV 13-02555-PHX-RCB (MEA)

10                     Plaintiff,

11        vs.                                        **O R D E R**

12
     Maricopa County Correctional Health
13   Services, et al.,

14                     Defendants.

15

16        On December 13, 2013, Plaintiff Richard LeGrand Gause, who is confined in the

17   Maricopa County Fourth Avenue Jail, filed a *pro se* civil rights Complaint pursuant to 42

18   U.S.C. § 1983 and an Application to Proceed *In Forma Pauperis*.  In a February 4, 2014

19   Order, the Court granted the Application to Proceed and dismissed the Complaint

20   because Plaintiff had failed to state a claim.  The Court gave Plaintiff 30 days to file an

21   amended complaint that cured the deficiencies identified in the Order.

22        On February 14, 2014, Plaintiff filed a Motion for Indigent Legal Representation

23   (Doc. 7) and a First Amended Complaint (Doc. 8).  On March 21, 2014, he filed a

24   "Request for the Courts to Order Maricopa County Correctional Health to Release My

25   Medical Records to Me" (Doc. 9).  On April 25, 2014, Plaintiff filed a Document

26   (Doc. 10) entitled "Verifying the Courts Received My Motions & Why No Response?"

27   . . . .

28   . . . .

1   **I.      Statutory Screening of Prisoner Complaints**

2          The Court is required to screen complaints brought by prisoners seeking relief

3   against a governmental entity or an officer or an employee of a governmental entity.  28

4   U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff

5   has raised claims that are legally frivolous or malicious, that fail to state a claim upon

6   which relief may be granted, or that seek monetary relief from a defendant who is

7   immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).

8          A pleading must contain a "short and plain statement of the claim *showing* that the

9   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8

10   does not demand detailed factual allegations, "it demands more than an unadorned, the-

11   defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

12   (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

13   conclusory statements, do not suffice."  *Id.*

14          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

15   claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

16   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual

17   content that allows the court to draw the reasonable inference that the defendant is liable

18   for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible

19   claim for relief [is] . . . a context-specific task that requires the reviewing court to draw

20   on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's

21   specific factual allegations may be consistent with a constitutional claim, a court must

22   assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.*

23   at 681.

24          But as the United States Court of Appeals for the Ninth Circuit has instructed,

25   courts must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338,

26   342 (9th Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less

27   stringent standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v.*

28   *Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

## II.      First Amended Complaint

In his one-count First Amended Complaint, Plaintiff sues the following Defendants at the Maricopa County Fourth Avenue Jail: Dr. Richard Friedman, Dr. Matt, Unknown Psychiatrist #1, and Unknown Psychiatrist #2.   In his Request for Relief, Plaintiff seeks monetary damages, treatment for his injuries, and payment of his medical bills.

Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights regarding his medical care.   He states that he was involved in a severe motorcycle accident in April 2013 and, as a result suffered multiple facial fractures, leg and knee fractures, and brain damage.   Plaintiff claims he was placed in a full leg brace for 8-12 weeks, that he has approximately one year to treat his severe short-term memory loss, and that he was told to consult with a neuro-psychiatrist for treatment of his brain damage.

Plaintiff's allegations concern two time frames: July 1 to August 30, 2013, and November 11, 2013 to the present.

### A.      July 1 to August 30, 2013

Plaintiff states that on July 1, 2013, he was arrested and that jail intake personnel took his cane and his leg brace.   Plaintiff contends that he was told he would receive a jail-approved brace and cane, but he did not receive them from July 1 to August 30, despite submitted numerous health needs request forms.

Plaintiff states that he saw Defendant Dr. Matt on July 14, that Defendant Dr. Matt had copies of his hospital records and saw that Plaintiff had been ordered to wear a brace and use crutches or a cane, but stated that he was "not going to do nothing himself" and would order Plaintiff to be seen by Plaintiff's orthopedist, which could take 6-8 months. Plaintiff alleges that his leg was still swollen, he could not walk on it, and could barely bend it.   Plaintiff states that he was given an Ace bandage and that Defendant Dr. Matt told Plaintiff to try to stay off his leg.   Plaintiff states that he did not see an orthopedist between July 1 and August 30 and alleges that he has severe knee damage because he was forced to move around on his leg without a brace and cane.

Plaintiff alleges that he immediately began submitting health needs request forms to see a psychiatrist to treat his memory loss, but did not see anyone until August 1, when he met with a psychiatric assistant who conducted his initial mental health evaluation, scheduled Plaintiff to see a psychiatrist, and told him that it would take no more than ten days to see the psychiatrist.  Plaintiff states that when he was released on August 30, he had not seen a psychiatrist.  He claims his memory loss is so severe that he often does not remember why he is confined and does not remember names and dates and things he does during the day.  He claims these are things a neuro-psychiatrist would be able to help him with, but he never received any treatment and, therefore, his condition is worsening.

Plaintiff claims he went to court on August 30 and his attorney told the judge that Plaintiff was not receiving any treatment, Plaintiff was not having his basic medical needs met, and the doctors were showing deliberate indifference to Plaintiff's medical needs.  Plaintiff claims the judge released him to pre-trial services because the medical staff at the Jail was not treating Plaintiff in an adequate time frame.  Plaintiff asserts that he was out of jail for approximately two months, but was rearrested because he forgot a court date.

**B.     November 7, 2013 to Present**

Plaintiff claims that he saw Defendant Dr. Matt within a few weeks of his return to the Jail, but Defendant Dr. Matt was unable to access Plaintiff's entire medical file because Maricopa County was putting inmate medical records on computers.  Plaintiff asserts that Defendant Dr. Matt refused to treat Plaintiff's knee-related medical issues without reviewing Plaintiff's entire medical file, although Defendant Dr. Matt could see that Plaintiff could barely walk and Defendant Dr. Matt re-ordered Plaintiff's nerve mediation without reviewing Plaintiff's entire medical file.  Plaintiff states that Defendant Dr. Matt told him that once he was able to review Plaintiff's medical records, he would re-order an appointment with an orthopedist if Plaintiff's medical records revealed that Plaintiff had been scheduled to see an orthopedist during his July-August confinement.

1    Plaintiff alleges that, as of the time he filed the First Amended Complaint, he still had not
2    been seen by an orthopedist.

3      Plaintiff also claims that he requested bi-lateral wrist braces and informed
4    Defendant Dr. Matt that he had received the wrist braces when he was detained in 2012
5    and during his July-August confinement.  Plaintiff alleges that Defendant Dr. Matt told
6    Plaintiff that the Jail "does not have the resources to re-order [Plaintiff] wrist braces for
7    [his] severe carpal tunnel, nerve damage and rheumatoid arthritis everytime [he] get[s]
8    out and come[s] back."  Plaintiff states that Defendant Dr. Matt knew Plaintiff had a
9    serious need for the wrist braces, stated that he would approve Plaintiff's family to bring
10   in a pair of wrist braces, and asked if Plaintiff he still had the pair the Jail had purchased
11   for him in July.  Plaintiff alleges that he told Defendant Dr. Matt that the braces were in
12   the motel room where he was arrested, that items in the motel room were now lost, and
13   that his family was financially unable to afford the braces and he was not in steady
14   contact with any family members.  Plaintiff states that Defendant Dr. Matt told him that
15   the Jail "isn't financially able to keep buying them for [Plaintiff] either, so maybe [he
16   will] quit coming back."

17     Plaintiff states that he eventually saw Defendant Friedman, who did not have
18   Plaintiff's medical records or electronic access to them.  Defendant Friedman examined
19   Plaintiff's knee and hands, conducted movement tests, determined Plaintiff "had issues,"
20   and told Plaintiff there was nothing he would do for Plaintiff's knee or hands.  Plaintiff
21   claims Defendant Friedman stated that he could write orders for wrist braces, a cane, and
22   a knee brace, "but most likely the jail will not approve them so he is not going to waste
23   the time ordering them."   When Plaintiff requested that Defendant Friedman schedule
24   Plaintiff to see an orthopedist, Defendant Friedman stated that he would not.  Plaintiff
25   alleges that even though he could barely walk, Defendant Friedman stated that Defendant
26   Dr. Matt had already made the decision not to schedule an appointment with an
27   orthopedist and Defendant Friedman was "not going to go against his orders."  Plaintiff

28

1   states that in January 2014, another doctor ordered the wrist braces, but Plaintiff still has
2   not received them.

3        Plaintiff contends that upon returning to the Jail in November 2013, he
4   immediately began requesting to see a psychiatrist regarding his brain damage and
5   memory loss.  Plaintiff states that he finally saw Defendant Unknown Psychiatrist #1 at
6   the end of December, he told her about his issues, and she told him that "memory loss
7   and dementia are symptoms that [the Jail] does not pay her enough to treat[, so] she will
8   not treat them."  Plaintiff alleges that when he saw Defendant Unknown Psychiatrist #2
9   in January 2014 and told her about his bad memory loss and other brain-related issues,
10  she told him that "there is nothing a Dr. can do, only time will heal [him]."  Plaintiff
11  states that he told Defendant Unknown Psychiatrist #2 that the psychiatric assistant had
12  been giving him lessons and exercises that might help his brain, explained that the
13  lessons and exercises seemed to be helping, and told Defendant Unknown Psychiatrist #2
14  that the psychiatric assistant had told him to ask her about a specific medication.  Plaintiff
15  alleges that Defendant Unknown Psychiatrist #2 said there were no medications or
16  proven treatments to help with brain damage, so she does not condone them.  Plaintiff
17  claims that the assertion that there is nothing she can do is clearly wrong because his
18  original doctor indicated that Plaintiff needed psychiatric care, Defendant Unknown
19  Psychiatrist #1 admitted that Plaintiff need care, and the psychiatric assistant admitted
20  that Plaintiff needs care and has attempted to help him despite not being fully qualified to
21  do so.

22       Plaintiff alleges that Defendants have acted with deliberate indifference to his
23  medical issue.  He claims he has suffered irreparable injury because Defendant Dr. Matt
24  failed to replace the cane and knee brace and failed to order wrist braces.  He claims the
25  failure to provide wrist braces has caused his carpal-tunnel syndrome to progress
26  drastically.  Plaintiff claims that he has suffered irreparable injury because Defendant
27  Friedman refused to treat his knee or hand issues, refused to issue orders for wrist and
28  knee braces and a cane, and refused to send him to an orthopedist.  He also asserts that

Defendants Unknown Psychiatrist #1 and #2's failure to treat his brain damage, memory loss, and dementia will result in a life-long irreversible brain damage because there is a limited time to treat these issues.

Liberally construed, Plaintiff has stated deliberate indifference claims against Defendants Dr. Friedman, Dr. Matt, and Unknown Psychiatrist #1 and #2.  The Court will require Defendants Dr. Friedman and Dr. Matt to answer the First Amended Complaint.

However, the Court will not direct that service be made on Defendants Unknown Psychiatrist #1 and #2 at this time.  As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint on an anonymous defendant.  Plaintiff may use the discovery process to obtain the name of Defendants Unknown Psychiatrist #1 and #2.  *See Wakefield v. Thompson*, 177 F.2d 1160, 1163 (9th Cir. 1999) (where identity of defendants is unknown prior to filing of complaint, plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds).  If Plaintiff later discovers the identity of these fictitiously named defendants, Plaintiff should seek to amend his First Amended Complaint to name them, in compliance with Rule 15 of the Federal Rules of Civil Procedure.

**III.    Motion for Indigent Legal Representation**

In his Motion for Indigent Legal Representation, Plaintiff requests that the Court appoint counsel because he has a severe brain injury and suffers from dementia and short-term memory loss.  He states that he does not believe he is capable of meeting deadlines or properly responding to motions and is concerned that he may receive orders from the court when he is having a memory blackout.

There is no constitutional right to the appointment of counsel in a civil case.  *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982).  In proceedings *in forma pauperis*, the court may request an attorney to represent any person

1   unable to afford one.  28 U.S.C. § 1915(e)(1).  Appointment of counsel under 28 U.S.C.

2   § 1915(e)(1) is required only when "exceptional circumstances" are present.  *Terrell v.*

3   *Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).  A determination with respect to

4   exceptional circumstances requires an evaluation of the likelihood of success on the

5   merits as well as the ability of Plaintiff to articulate his claims *pro se* in light of the

6   complexity of the legal issue involved.  *Id.*  "Neither of these factors is dispositive and

7   both must be viewed together before reaching a decision."  *Id.* (quoting *Wilborn v.*

8   *Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

9           Having considered both elements, it does not appear at this time that exceptional

10  circumstances are present that would require the appointment of counsel in this case.  The

11  Court notes that Plaintiff did not miss the deadline imposed in the February 4 Order and

12  has been able to adequately articulate his claims on his own.  Thus, the Court will deny

13  without prejudice Plaintiff's Motion for Indigent Legal Representation.

14  **IV.     Request for Release of Medical Records**

15          Plaintiff requests that the Court order Correctional Health Services to allow

16  Plaintiff to review or provide copies of his medical file.  He alleges that many of his

17  medical records are computerized, inmates are not allowed to access a computer, the cost

18  of printing out his medical records is $9,100, and he has been told that he must pay this

19  amount in full, despite his indigence, or he will not be permitted to review his medical

20  file.

21          To the extent Plaintiff is seeking discovery in this case, his request is premature.

22  The Court will direct the Clerk of Court to send Plaintiff a service packet containing

23  summonses and request for waiver forms for Plaintiff to complete and return to the Court.

24  If Plaintiff returns those forms to the Court, the Court will direct the United States

25  Marshal to notify the Defendants of the commencement of the action, request waiver of

26  service of the summonses, and serve Defendants if they do not waive service.  The Court

27  will issue a scheduling order setting discovery deadlines *after* Defendants have answered

28

the First Amended Complaint.  Thus, the Court will dismiss without prejudice Plaintiff's Request regarding his medical records.

## V.    April 25 Document

In his April 25 Document, Plaintiff notes that he filed a First Amended Complaint, a motion for legal representation, and a request regarding his medical records.  He requests that the Court "respond soon" to his filings.  Plaintiff's April 25 Document is granted to the extent this Order addresses his First Amended Complaint and other filings.

## VI.   Warnings

### A.    Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release.  Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot.  Failure to comply may result in dismissal of this action.

### B.    Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### C.    Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files.  Fed. R. Civ. P. 5(a).  Each filing must include a certificate stating that a copy of the filing was served.  Fed. R. Civ. P. 5(d).  Also, Plaintiff must submit an additional copy of every filing for use by the Court.  *See* LRCiv 5.4.  Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D.    Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v.*

*Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's Motion for Indigent Legal Representation (Doc. 7) is **denied without prejudice**.

(2)     Plaintiff's "Request for the Courts to Order Maricopa County Correctional Health to Release My Medical Records to Me" (Doc. 9) is **denied as premature**.

(3)     Plaintiff's April 25, 2013 Document (Doc. 10) is **granted** to the extent this Order addresses his First Amended Complaint and other filings.

(4)     Defendants Dr. Friedman and Dr. Matt must answer the First Amended Complaint.

(5)     The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 8), this Order, and both summons and request for waiver forms for Defendants Dr. Friedman and Dr. Matt.

(6)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(7)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

(8)     The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(9)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.  **The Marshal must immediately file signed waivers of service of the**

**summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

      (a)     personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

      (b)     within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(10)   **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(11)   Defendants must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

. . . .

1     (13)   This matter is referred to Magistrate Judge Mark E. Aspey pursuant to

2   Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

3   authorized under 28 U.S.C. § 636(b)(1).

4     DATED this 2nd day of May, 2014.

Stephen M. McNamee
Senior United States District Judge